## MARYLAND CASUALTY COMPANY *vs.* UNION BRIDGE ELECTRIC MANUFACTURING COMPANY.

*Workmen's Compensation Act—Action Against Tort Feasor— Award to Dependents—Validity—Collateral Attack— Averment of Negligence.*

An allegation, in an action for damages, that the death of a person named "was directly caused by the negligence and want of care of the agents and servants of" defendant "in maintaining an unprotected, highly charged wire within a few inches of the roof of" a building on which deceased was working, "and without negligence or want of care on the part of the said" deceased, was sufficiently definite and certain.          p 649

The validity of a judgment cannot be attacked by one in no way interested in its enforcement.                                   p. 650

In an action by an insurer under the Workmen's Compensation Act, for the insurer's own use and the use of the dependents of a deceased employee, to recover on account of defendant's negligence which caused the employee's death, defendant cannot question the validity of the award, made by the Industrial Accident Commission on account of such death, which had been paid by plaintiff insurer, or for which it was liable.

pp. 650, 651

In a suit against a tort feasor on account of the death of an employee, by an insurer under the Workmen's Compensation Act, defendant's liability is independent of the fact and amount of the award, made by the Industrial Accident Commission on account of such death, and paid by the insurer, but the measure of damages is the same as if the employee's dependents had proceeded against defendant in the first place, the insurer being merely subrogated to the rights of such dependents to the extent of the award.                                      pp. 650, 651

It is the fact of the award which subrogates the insurer to the rights of the injured employee or his dependents if it accepts the decision of the commission, and authorizes it to enforce the liability of the tort feasor.                   p. 651

The only parties interested in an award for an employee's death being his dependents and the insurer, if neither of them appeal, the award is as valid as if it had been affirmed by the Court of Appeals, except as against one not a party to the award, in a suit thereon.                                 p. 651

*Decided May 2nd, 1924.*

Appeal from the Circuit Court for Carroll County (Moss, J.).

Action by the Maryland Casualty Company, for its own use, and for the use of Iva N. Harbaugh and others, against the Union Bridge Electric Manufacturing Company. From certain orders in favor of defendant, plaintiff appeals. Order reversed.

The cause was argued before THOMAS, PATTISON, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*Guy W. Steele* and *Austin J. Lilly,* with whom were *Clapham Murray, Jr.,* and *Joseph D. Brooks* on the brief, for the appellant.

*Francis Neal Parke,* with whom were *Leon R. Yourtee* and *James A. C. Bond* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

This appeal is from an order sustaining a demurrer to the *narr.,* filed by the insurer for its own use, and for the use of the dependents of a deceased employee, against an alleged tort feasor under section 58 of the Workmen's Compensation Act, and from the refusal of the trial court to permit certain amendments to the *narr.*

The *narr.* was as follows:

"The plaintiff, Maryland Casualty Company, a body corporate, for its own use and to the use of Iva R. Arbaugh, Marion W. Arbaugh, Mabel L. Arbaugh, Benton A. Arbaugh, Ralph C. Arbaugh, and Charles G. Arbaugh, by Guy W. Steele, its attorney, sues Union Bridge Electric Manufacturing Company, a body corporate,

"For that heretofore, on or about the 13th day of September, 1922, Benton W. Arbaugh, deceased, was employed by the Board of Education of Carroll County, State of Maryland, to assist in making repairs and changes to the school property in Carroll County, and was engaged in repairing the heating plant in the Linwood Schoolhouse, located at Linwood, Carroll County, State of Maryland, at the time of the happening of the wrong hereinafter mentioned; that in order to make the aforesaid changes and repairs it became necessary for the said Benton W. Arbaugh to go upon the roof of the said schoolhouse, in order to rebuild a chimney located on the said roof; that the defendant, the Union Bridge Electric Manufacturing Company, a body corporate, through its agents and serv-

ants, negligently maintained wires, heavily charged
with electricity, within a few inches of the roof of
the said school house; that the said Benton W. Ar-
baugh, not knowing or having any reason to know the
dangerous condition of the said wires, while perform-
ing his work on or near the said roof, came in con-
tact with the said wires and was immediately electro-
cuted; that the death of the said Benton W. Ar-
baugh was directly caused by the negligence and want
of care of the agents and servants of the said defend-
ant in maintaining an unprotected, highly charged
wire within a few inches of the roof of said school
house and without negligence or want of care on the
part of the said Benton W. Arbaugh directly contrib-
uting thereto; that heretofore, Iva N. Arbaugh, the
widow of Benton W. Arbaugh, and Marion W. Ar-
baugh, Mabel L. Arbaugh, Benton A. Arbaugh, Ralph
C. Arbaugh, and Charles G. Arbaugh, the children of
Benton W. Arbaugh, made claim for compensation
against the employer of Benton W. Arbaugh, to wit,
the Board of Education of Carroll County, before the
State Industrial Accident Commission of Maryland
under the provisions of article 101 of the Public Gen-
eral Laws of the State of Maryland and amendments
thereto, commonly known as the Workmen's Compen-
sation Act, and the said State Industrial Accident
Commission did heretofore, to wit, on the 28th day of
September, 1922, find, as a matter of fact, that the
said Benton W. Arbaugh was injured on the 13th
day of September, 1922, while in the employ of the
Board of Education of Carroll County; that, as a re-
sult of said injury he died on the same day; that the
said injury and death arose out of and in the course
of his employment; that his average weekly wage was
eighteen dollars ($18.00), and that he left, surviving
him, his widow, Iva N. Arbaugh, and Marian W. Ar-
baugh, Mabel L. Arbaugh, Benton A. Arbaugh, Ralph
C. Arbaugh, and Charles G. Arbaugh, children. And
the said Board of Education of Carroll County had
duly insured its liability under the Workmen's Com-
pensation Act aforesaid with the Maryland Casualty

Company, and in pursuance of which findings of fact, the said commission, on the 28th day of September, 1922, did, in the due exercise of its authority, order the said Board of Education of Carroll County, the employer, and the Maryland Casualty Company, as insurer, to pay unto Iva N. Arbaugh, widow of Benton W. Arbaugh, deceased, compensation at the rate of twelve dollars ($12.00) per week, payable weekly for the period of four hundred and sixteen (416) weeks, said compensation to begin as of the 13th day of September, 1922. And it was further ordered by the said commission that the said employer and insurer should also pay unto the said Iva N. Arbaugh funeral expenses, not to exceed one hundred twenty-five dollars ($125.00), incurred by reason of the death of her husband, and the said Iva N. Arbaugh was further ordered and directed to apply such compensation to the use of herself and her children, Marian W. Arbaugh, Mabel L. Arbaugh, Benton A. Arbaugh, Ralph C. Arbaugh, and Charles G. Arbaugh, in such proportion as to her might seem best; that the said Maryland Casualty Company was at the time of the accidental injury to the said Benton W. Arbaugh, deceased, insurer of the said Board of Education of Carroll County, under and pursuant to the Workmen's Compensation Act aforesaid, and by reason of its obligation as such insurer, has paid compensation so awarded, as aforesaid, and has paid or rendered itself liable to pay sums of money for medical treatment to the said Benton W. Arbaugh, deceased, and has incurred other rightful expenses in and about his injuries and death as herein set forth," and the plaintiff claims $30,000 damages.

And the demurrer was as follows:

The defendant, by Leon R. Yourtee and Bond & Parke, "its attorneys, demurs to the plaintiff's declaration and for cause for such demurrer says:

"1.    That the said declaration is bad in substance.

"2.    That the said declaration is insufficient in law.

"3.    That the Board of Education of Carroll County, mentioned in the plaintiff's declaration, is not

within the scope, terms and provisions of the Workmen's Compensation Act of the State of Maryland, known as article 101 of the Code of Public General Laws of the State of Maryland, with the acts amendatory thereof and supplementary thereto.

"4.   That it appears from the declaration in this case that the case was not brought within two months from the date of the award of the State Industrial Accident Commission of Maryland.

"5.   That it appears from said declaration that Benton W. Arbaugh, the person named in said declaration as having been killed by the accident therein described, was a casual employee, and so was not at the time within the scope and meaning of the Workmen's Compensation Act as aforesaid.

"6.   That the said declaration is too indefinite and uncertain in setting out the alleged negligence causing the death of the said Benton W. Arbaugh.

"7.   That the said Maryland Casualty Company is not an insurer entitled to bring this action either for the benefit of itself or for the widow and surviving children of the said Benton W. Arbaugh."

The rulings on the motion for leave to amend were brought up by two bills of exceptions, which it will be unnecessary to set out or to consider in the view we take of the case.

The grounds of the demurrer relied on by appellant are:

1.   The Board of Education of Carroll County is not within the meaning of the Workmen's Compensation Act.

2.   The employee was employed otherwise than in the course of the employer's trade, business or occupation.

3.   That the declaration does not certainly allege that the death of the employee was caused by the negligence of appellee.

As to the third ground, in our opinion, the allegation in the *narr.* "that the death of the said Benton W. Arbaugh was directly caused by the negligence and want of care of the agents and servants of the said defendant in maintaining an unprotected, highly charged wire within a few inches of the roof of said schoolhouse and without negligence or want of

care on the part of the said Benton W. Arbaugh," is sufficiently definite and certain.

As to the first and second, we do not think these questions were open to inquiry in this case at the instance of appellee.

It is quite true that a judgment binds only parties to it and their privies; but it does not necessarily follow that a third party may, in a collateral proceeding, question its validity, when he is in no way interested in the subject matter of the judgment, and in no way prejudiced by it.

Mr. Black, the author of the well known work on *Judgments,* and of the article on *Judgments* in *Cyc.,* says, in 23 *Cyc.,* page 1068:

"A stranger to the record—who was not a party to the action in which the judgment was rendered nor in privity with a party—is not prohibited from impeaching the validity of the judgment in a collateral proceeding; but in order to do so he must show that he has rights, claims, or interests which would be prejudiced or injuriously affected by the enforcement of the judgment, and which accrued prior to its rendition."

Without adopting this citation in its entirety with all its implications, we hold that the validity of a judgment may not be attacked by one in no way interested in the enforcement of it. *Freydenhall* v. *Baldwin,* 103 Ill. 325; *Wilcher* v. *Robertson,* 78 Va. 602; *Harpold* v. *Doyle,* 16 Idaho, 671, 694.

It is apparent that appellee had no possible interest in the question of award *vel non* by the Commission, or of its amount; that neither the fact of *an* award, nor the amount of the award actually made, could in any way affect appellee's liability as a tort feasor; that the measure of damages in any suit that might have been brought to establish such liability would have been the same without regard to the ruling of the Commission as to its jurisdiction.

The insurance company is subrogated to the rights of the dependents of the deceased employee to the extent of the award. By reason of the subrogation it had the right under the statute to enforce the liability of the wrongdoer to the dependents, and to reimburse itself from any judgment that

might be recovered for the amount it had paid, or was required to pay, such dependents.   But the amount of the award is not the measure of damages in the suit against the wrongdoer.   In that suit the measure of damages is the same as if the dependents had proceeded against him in the first place.

The only parties interested in the award were and are the dependents and the insurance company.   Either could have appealed, but neither did, and at the date of the institution of this suit the time for appeal had passed, and the award was as valid as if it had been affirmed by this Court.   Of course if the suit were on *the award,* then, even if it had been affirmed by this Court on appeal, its validity could be attacked by a defendant, who was not a party to it.   But that is not the situation here.

The right of the employer (if he is self insured), insurance company, association or the State Accident Fund, under section 58, to enforce for their benefit the liability of the tort feasor is established "if compensation is *claimed* and *awarded* or *paid* under this act."

It may be contended that the words quoted immediately above, and italicized by us, must be considered in connection with, and are qualified by, the first part of section 58; and that all the provisions of this section are made to depend upon compensation being *"payable"* under the act.   But whether compensation is payable under the act is one of the questions which the Commission is authorized to pass on, and which it must pass on before the award is made.   And when it has been passed on and the award made by the Commission, then the insurance company is authorized to enforce the liability of the tort feasor.   It is the *fact* of the award which subrogates the insurance company to the rights of the injured employee or his dependents if it accepts the decision of the Commission, and authorizes it to enforce the liability of the tort feasor.   That such is the meaning of the provision above quoted becomes more apparent when it is considered in connection with a later provision in the same section, viz.:

"If any such employer, insurance company, association, or State Accident Fund shall not within two months from the passage of the award by *this Commission,* start proceedings to enforce the liability of such other person, the injured employee, or in case of death, his dependents, may enforce the liability of such other person," etc. See Acts 1920, Ch. 456, and Acts 1922, Ch. 303. That clearly means that, after two months from the date of the award, if the employer or insurer has failed to institute suit against the tort feasor, whether because of an appeal from the award or for any other reason, the employee himself, or in case of his death, his dependents, may institute suit, it being provided in section 56 that "an appeal shall not be a stay."

Indeed it would seem that the legislators had in mind the possibility of the loss of the right of action against the tort feasor by delays pending the final decision as to claims under this act, and to have been careful as far as possible to guard against such a result. By the very next section (59) the beginning of the running of the statute of limitations is deferred, in case the provision of the act should become invalid because of any adjudication, or be repealed. It is reasonable to infer that such a situation as we have here would also have been provided for by section 59 if the Legislature had intended such a construction of section 58 as is contended for by appellee. They could hardly have failed to realize how often the right of dependents of a deceased employee to sue a tort feasor would be lost by delay if it depended upon the determination, in a suit against him under this act, whether the Industrial Accident Commission had jurisdiction to make an award on the claim of such dependents against the employer of their decedent. For it must have been obvious to the legislators that by the time such a suit ran its course through the courts, the year allowed for commencement of an action under Lord Campbell's Act could easily have passed.

And so we adopt the construction which seems to be in harmony with the intent of the Legislature, as that intent appears from the act itself.

It follows that, in our opinion, the demurrer to the declaration should have been overruled.

> *Order reversed and case remanded for further proceedings, with costs to appellant.*

OFFUTT, J., dissents.

JUDGE THOMAS, who sat in this case and was present at the consultation, but has since died, did not agree with the conclusion reached in the opinion.