William Ronald BARKER and Delores Barker, Respondents,

v.

H & J TRANSPORTERS, INC., and its Insurer, American States Insurance Company, Appellants Intervenors,

Raymond Palmarin and John Scharff and Northland Insurance Company, Defendants.

No. WD 45092.

Missouri Court of Appeals, Western District.

July 21, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied
Sept. 1, 1992.

Application to Transfer Denied
Oct. 27, 1992.

George C. Allen, Jr., Kansas City, for appellants.

Andrew J. Gelbach, Warrensburg, for respondents.

Before HANNA, P.J., and FENNER and ULRICH, JJ.

ULRICH, Judge.

H & J Transporters, Inc., (H & J) and its Workers' Compensation insurer, American States Insurance Company (American States), appeal the subrogation action judgment distributing $25,000 of insurance proceeds paid into the court by Dairyland Insurance Company. H & J and American States sought recovery for a portion of the $25,000 as a result of their having paid $57,253.74 in Workers' Compensation benefits. The court awarded 92.5 percent of the $25,000 ($23,125) to William R. Barker and 7.5 percent of the $25,000 ($1,875) to H & J and American States for their subrogation claim. On appeal, H & J and American States assert that the trial judge, by misinterpreting the term "recovery" in § 287.150.3, RSMo Supp.1990, applied the incorrect formula for determining how much of the insurance proceeds should be allocated for appellants' subrogation claim pursuant to § 287.150.3. The issue presented is whether "recovery" as used in § 287.150.3, which gives a subrogation claim against third parties to contributors who paid Workers' Compensation benefits, means judgments against third parties or amounts actually received for third party liability.

The judgment is reversed and the trial court is ordered to enter judgment in accordance with this opinion.

The record on appeal establishes the following facts. On September 4, 1987, Mr. Barker, while in the course of his employment with H & J, was involved in an automobile accident caused by the negligence of Raymond Palmarin. At the time of the accident, a liability policy purchased by H & J from Northland Insurance Company (Northland) was in effect. The policy covered the vehicle Mr. Barker was driving and included uninsured/underinsured motorist coverage with a combined limit of $50,000. Shandy Stewart owned the truck driven by Mr. Baker and leased to H & J. Shandy Stewart had also purchased an identical liability policy from Northland which also covered the tractor-trailer Mr. Barker was driving. This policy also included the same uninsured/underinsured motorist coverage with a combined single limit of $50,000. Mr. Scharff, driver of another vehicle involved in the accident, did not have liability insurance coverage. Mr. Palmarin was covered by a liability insurance policy issued by Dairyland Insurance Company (Dairyland) with limits of $25,000. The Dairyland insurance policy amount was paid into court, and division of the $25,000 is the focus of controversy in this appeal.

Mr. Barker suffered numerous injuries as a result of the accident. Mr. Barker made a Workers' Compensation claim against his employer H & J, and its insurer American States. American States and H & J paid $57,253.74 in Workers' Compensation benefits to or on behalf of Mr. Barker. On March 29, 1989, Mr. Barker and his wife filed suit against Mr. Palmarin, alleging that he negligently drove the vehicle he was in on the wrong side of the road thereby contributing to cause the accident; against Mr. Scharff, alleging that his improper turn contributed to cause the wreck; and against Northland for the two insurance policies issued to both H & J and Mr. Stewart, which provided $50,000 uninsured/underinsured motorist coverage for each separate policy.

On July 24, 1989, H & J and American States intervened in the case seeking to assert their subrogation rights, pursuant to § 287.150, against Mr. Scharff and Mr. Palmarin, and against Northland for the uninsured/underinsured coverage provision contained in the policy issued by Northland to H & J. H & J and American States do not claim a right to the uninsured motorist policy purchased by Mr. Stewart but only the $50,000 uninsured/underinsured policy purchased by H & J from Northland. Northland moved for summary judgment against H & J and American States claiming that, first, H & J and American States had no right of subrogation against the uninsured/underinsured motorist benefits provided by Northland's policy and, second, that the policy excluded coverage for Workers' Compensation benefits. The trial court sustained the motion for summary judgment on November 27, 1989, designating the ruling as final for purposes of appeal, which H & J and American States appealed. On September 11, 1990, this court affirmed the trial court's summary judgment, holding that H & J and American States were not entitled to any portion of Northland's uninsured/underinsured motorist coverage because Northland was not a "third person" liable to the employee and, therefore, H & J and American States have no subrogation rights to those insurance proceeds. *Barker v. Palmarin*, 799 S.W.2d 117 (Mo.App.1990).

On May 11, 1990, Mr. Barker, pursuant to § 537.065, RSMo 1986, settled with Mr. Palmarin's insurer, Dairyland. Dairyland agreed to pay into the court its $25,000 policy limits in return for the Barkers' agreement not to execute on the judgment against Mr. Palmarin and/or his insurer, Dairyland, in the event that judgment is entered against Mr. Palmarin. Accordingly, Dairyland paid the $25,000 into the circuit court. On May 31, 1991, H & J and American States filed their Motion and Suggestions for the Distribution of Funds, based on their subrogation rights under § 287.150.3, for a portion of the $25,000 paid into the court by Mr. Palmarin's insurance carrier, Dairyland.

On March 18, 1991, Mr. Barker and his wife entered into a settlement with Northland whereby Mr. Barker and his wife agreed to dismiss Northland from the law-

suit with prejudice in return for payment by Northland of the $50,000 uninsured/underinsured provision of the policy purchased by Mr. Stewart and payment of $37,500 uninsured/underinsured provision of the policy purchased by H & J. On March 29, 1991, after the Barkers voluntarily dismissed the action against Mr. Scharff, the court called the case for trial and, after hearing the evidence produced by the Barkers, entered the following judgment:

> Plaintiffs appear in person and by attorney Andy Gelbach. Defendant–Intervenors H & J Transporters and American States Insurance Company appear by attorney George Allen. Evidence presented. No one else appears. Court finds that in the wreck at issue in this course of action, the defendant Raymond Palmarin is 100% at fault and plaintiff William Barker is 0% at fault. Court assesses the damages of Plaintiff William Barker at $700,000.00 and assesses the damages of Plaintiff Delores Barker at $50,-000.00.[1]

On July 8, 1991, the trial court heard evidence on appellants' motion for distribution of the $25,000 paid by Dairyland into court. Appellants H & J and American States offered proof of the subrogation amount and the Workers' Compensation settlement with Mr. Barker for $57,253.74. Appellants, by offering evidence concerning efforts to collect their subrogation interest from Dairyland, established that they, along with the Barkers, effected the settlement agreement with Dairyland. The Barkers entered as evidence the § 537.065 agreement with Dairyland and the payment of Dairyland's policy limits into court. The Barkers also entered as evidence the settlement agreement with Northland for $87,-500 and the judgment against Mr. Palmarin, wherein the court ordered judgment for Mr. Barker and his wife for $700,000 and $50,000, respectively. Subsequently, on July 10, 1991, the court made the following determination regarding division of the $25,000 paid into court by Dairyland:

> The Court, having taken the matter under advisement, does hereby make the following Order to the Circuit Clerk for the distribution of the $25,000.00 presently held in the Court registry in this case: $23,125.00 to Plaintiffs Barker; $1,875.00 to Intervenors H & J Transporters, Inc., and their Insurer American States Insurance Company. The Court, in arriving at the division, applies the formula as interpreted by this Court to apply to the facts of this case, recommended in the case of *Ruediger vs. Kallmeyer,* (510 [*sic*] S.W.2d 56, Mo.Banc., 1973). The Court finds the amount of Intervenors [*sic*] claim, (excluding a claim for attorney's fees and expenses as agreed to for the record by Intervenors' counsel) to be $57,244.00. The amount of Plaintiffs' total recovery was $800,000.00 (Eight Hundred Thousand Dollars)[2]. Plaintiffs having already received $87,500.00 towards their recovery from other sources, has [*sic*] a remaining recovery right of $712,-500.00. For purposes of this Order of Distribution, the Court does not consider attorney fees and expense claims of Plaintiffs Barker, either. $712,500.00 (amount of Plaintiffs' recovery) plus $57,-244.00 (amount of Intervenors' claim) equals a total of $769,744.00. Plaintiffs' claim equals 92.5% of the total amount claimed. 92.5% of $25,000 equals $23,-125.00, which is the amount the Clerk is ordered to pay to Plaintiffs. 7.5% of the $25,000.00 equals $1,875.00, which is the amount the Clerk is ordered to pay to Intervenors and their insurers. If the Clerk has accrued any interest earned on the deposited funds, the Clerk is ordered to disburse the interest earned to the parties in the same 92.5%–7.5% ratio.

On July 18, 1991, H & J and American States appealed this judgment.

The meaning of the word "recovery" in § 287.150.3 of the Workers' Compensation

---

1. Pursuant to the parties' § 537.065 settlement agreement, the Barkers were prohibited from attempting to collect any of this judgment beyond the $25,000 paid into the court by Dairyland.

2. The correct amount of plaintiffs' judgment against Mr. Palmarin totals $750,000.00.

Act is dispositive of this appeal.[3] H & J and American States argue that the term "recovery," as used in the context of the statute and its underlying public policy, refers only to the amount of compensation actually collected by the employee and the employer. The Barkers, on the other hand, contend that "recovery" should include all judgments, regardless whether they have been collected,[4] and settlements from third persons. Neither party's brief cited case law authority defining "recovery" as applied to the Workers' Compensation Act. After reviewing the statute, decisions interpreting the statute, and the public policy behind the Act, this court holds that "recovery" means the amount of money actually recovered from third persons.

■ The Missouri Supreme Court in *Maryland Cas. Co. v. General Elec. Co.*, 418 S.W.2d 115, 117 (Mo. banc 1967) (quoting *Schumacher v. Leslie*, 360 Mo. 1238, 1248, 232 S.W.2d 913, 919 (1950)), examined the history and policy behind the Workers' Compensation Act and made the following findings:

> Under the Missouri Act and the decisions construing it there is no double recovery, an evil to be avoided, because whoever, the employer or the employee, recovers against a third person tort-feasor holds so much of such recovery as in truth and in fact belongs to the other as an express trustee—the employee to see that the employer's right of subrogation is protected, and the employer to see that the employee receives any surplus after his indemnification.

One of the implicit underlying policies of the Workers' Compensation Act is to prevent double recovery by the injured employee. *Id.*

■ Section 287.150.3 provides assistance to determine the legislative intent as to what the term "recovery" includes. The statute prescribes that "the employer shall pay from his share of the recovery a proportionate share of the expenses of the recovery...." § 287.150.3. The legislature intended by its use of the language "shall pay from his share of the recovery" that the term "recovery" means money actually recovered from third persons. *Id.* Further evidence that "recovery" is limited to the money actually collected is apparent where the legislature provides later in the statute that "[a]ny part of the recovery found to be due to the employer, the employee or his dependents shall be paid forthwith and any part of the recovery paid to the employee or his dependents under this section shall be treated by them as an advance payment by the employer...." *Id.* The legislature's employment of such terms as "shall be paid" and "any part of the recovery paid to the employee" impliedly reflects the legislature's intent to mean only monies actually recovered from third persons. *Id.*

The Missouri Supreme Court in *Ruediger v. Kallmeyer Bros. Serv.*, 501 S.W.2d 56, 58 (Mo. banc 1973), evinces an intention to interpret "recovery" as monies actually collected when, in its method of calculating the amount that the employer and its insurer should recover for its subrogation claim under § 287.150(3), it stated the following:

> the employee or his dependents shall be paid forthwith and any part of *the recovery* paid to the employee or his dependents under this section shall be treated by them as an advance payment by the employer on account of any future installments of compensation. (emphasis added)

3. Section 287.150.3 specifies that:

> Whenever *recovery* against the third person is effected by the employee or his dependents, the employer shall pay from his share of *the recovery* a proportionate share of the expenses of *the recovery*, including a reasonable attorney fee. After the expenses and attorney fee have been paid the balance of *the recovery* shall be apportioned between the employer and the employee or his dependents in the same ratio that the amount due to the employer bears to the total amount recovered, or the balance of *the recovery* may be divided between the *employer* and the employee or his dependents as they may agree. Any part of *the recovery* found to be due to the employer,

4. The Barkers contend that their default judgment against Mr. Palmarin should be factored into the formula for determining their proportionate share of the $25,000. However, according to the § 537.065 settlement agreement between the Barkers and Mr. Palmarin, the Barkers could only legally collect the $25,000 insurance policy issued to Mr. Palmarin from Dairyland.

(1) The expenses of the third party litigation should be deducted from the third party recovery; (2) the *balance* should be apportioned in the same ratio that the amount paid by the employer at the time of the third party recovery bears to the *total amount recovered* from the third party; (3) the amount due each *should be paid* forthwith; (4) the amount paid the employee should be treated as *advance payment* on account of any future installments of compensation; and (5) in a case as presented here the employee should be entitled to future compensation benefits in the event the *amount paid* him as an advance is exhausted under the provision of the statute.

*Id.* at 59 (emphasis added). These emphasized words and phrases used by the Court in *Ruediger* indicate that "recovery" is limited to the amount actually collected from the third person. *Id.*

■ Finding that the statutory term "recovery" includes in its definition only those monies actually collected, implementation of the *Ruediger* formula, as modified by the decision in *Parker v. Laclede Gas Co.*, 770 S.W.2d 461, 463–64 (Mo.App.1989),[5] is necessary. This formula, as applied in the present appeal, produces the following results: The Barkers' percentage interest in the $25,000 is arrived at by dividing their actual recovery, $87,500, by $144,744 [$87,-500 (Barkers' actual recovery) plus $57,244 (appellants' Workers' Compensation lien) ], which equals 60.45 percent; and the interest that H & J and American States have in the $25,000 is arrived at by dividing their subrogation interest, $57,244, by $144,744, which equals 39.55 percent. Thus, the Barkers are entitled to 60.45 percent of the $25,000 of the monies paid into the court, or $15,112.50, while H & J and American States are entitled to 39.55 percent of the $25,000, or $9,887.50. Accordingly, the judgment is reversed and the cause is remanded to the trial court with directions to

enter judgment consistent with this opinion.

All concur.

---

**5.** *Parker* determined that when both employer and employee have "effected" the recovery pursuant to § 287.150.3, then each party will pay his own fees and expenses from his share of the recovery. 770 S.W.2d at 463.