623 A.2d 184

**ERIE INSURANCE COMPANY, et al.**

v.

**Zesco F. CURTIS.**

**No. 123, Sept. Term, 1992.**

Court of Appeals of Maryland.

April 22, 1993.

Morris Kletzkin (Amy L. Epstein of Friedlander, Misler, Friedlander, Sloan & Herz, Washington, DC, all on brief), for appellants.

John J. Yannone (Eugene M. Zoglio, P.A., and Thomas McKeon, all on brief), Bowie, Benjamin S. Vaughan (David M. Simmons, of Armstrong, Donahue & Ceppos, Chtd., all on brief), Rockville, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, and ROBERT M. BELL, JJ.

KARWACKI, Judge.

We issued a writ of certiorari in this case to determine whether a workers' compensation insurer may assert its statutory lien for compensation paid to an injured worker against a recovery made by that worker under the unin-

sured motorist coverage of his employer's automobile liability insurance policy.

## I.

Appellee, Zesco F. Curtis, was injured in an automobile accident while in the course of his employment with Entec Technicom, Inc. ("Entec") on October 30, 1987. The accident occurred when a motorist who was operating a stolen vehicle collided head-on with Curtis's vehicle. The driver of the stolen vehicle was never apprehended.

At the time of the accident, Curtis was operating a vehicle owned by Entec which it had insured through Nationwide Mutual Insurance Company ("Nationwide"). The insurance policy covering Entec's vehicle provided uninsured motorist coverage with limits for bodily injury of $50,000.00 per person, per accident. The parties concede that the unidentified motorist whose vehicle collided with Curtis's vehicle was operating an uninsured motor vehicle within the meaning of both Nationwide's policy and Maryland Code (1957, 1986 Repl.Vol., 1990 Cum.Supp.), Article 48A, § 541, mandating that every policy of motor vehicle liability insurance provide uninsured motorist coverage.

As a result of his work-related injuries, Curtis applied for workers' compensation benefits with the Workers' Compensation Commission. Entec maintained workers' compensation coverage through Erie Insurance Company ("Erie"). As a result, Erie paid $14,259.10 in workers' compensation to Curtis.

On August 15, 1990, Curtis brought a breach of contract action in the Circuit Court for Prince George's County against Nationwide to recover the uninsured motorist benefits due him under his employer's policy. After Nationwide filed its answer, Erie was permitted to intervene as a plaintiff. In its Intervenor's Complaint, Erie stated in relevant part:

12. Pursuant to Maryland Annotated Code, Article 101, Section 58, the plaintiff intervenor has a lien on any

judgment or settlement on this case for benefits paid to or on behalf of the plaintiff, pursuant to the Workers' Compensation Act above-referenced.

13. The plaintiff intervenor, Erie Insurance Company, has a subrogated interest in the amount recovered, if any, by the plaintiff against the defendant in this proceeding.

Erie and Curtis each filed motions for summary judgment. In his motion for summary judgment and at the motions hearing, Curtis asserted that Erie was not entitled to a lien against the amount payable to him under the uninsured motorist coverage provided by Nationwide. Erie contended that it had a right to assert a lien against the uninsured motorist benefits provided by Nationwide, notwithstanding that Nationwide was entitled by statute to reduce the uninsured motorist benefits payable to Curtis by any amount awarded him as workers' compensation. Nationwide simply took the position that by statute it was entitled to offset the uninsured motorist benefits to the extent that Curtis was awarded compensation under any workers' compensation laws.

In a well reasoned opinion, Judge James P. Salmon concluded that Erie, the workers' compensation carrier, was not entitled to assert its statutory lien for workers' compensation benefits paid to Curtis against money due him under an uninsured motorist policy. Judge Salmon reasoned "that the legislature did not intend that [workers'] compensation carriers should have a lien against third parties, such as uninsured motorist carriers, who are liable in contract but not in tort." Consequently, having determined that Erie had no right to assert a lien against the uninsured motorist benefits, the court denied Erie's motion for summary judgment, granted Curtis's motion for summary judgment, and dismissed Erie as a party to the suit. Erie noted an appeal to the Court of Special Appeals. We issued our writ of certiorari prior to consideration of the case by the intermediate appellate court, and we shall affirm.

## II.

■ Erie's argument that it is entitled to assert a lien for the compensation awarded to Curtis is based on its construction of Md.Code (1957, 1985 Repl.Vol., 1990 Cum. Supp.), Article 101, § 58.[1] This section of our workers' compensation law gives the employer or its workers' compensation carrier the right to recover from a third party who causes an injury to its employee any workers' compensation which the employer or its insurance carrier has been required to pay to its employee because of that injury. *Anne Arundel County v. McCormick*, 323 Md. 688, 692, 594 A.2d 1138, 1140 (1991). For two months after compensation is awarded or paid, the employer or insurance carrier has the exclusive right to sue the third party. *Id.* Thereafter, the employee may do so. *Id.*

It is well settled that Article 101, § 58 "does not create a cause of action in the employer but rather subrogates it to the claim of its injured employee against the responsible third party." *McCormick*, 323 Md. at 693, 594 A.2d at 1140; *Smith v. Bethlehem Steel Corp.*, 303 Md. 213, 222, 492 A.2d 1286, 1290 (1985); *Johnson v. Miles*, 188 Md. 455, 460, 53 A.2d 30, 32 (1947); *Baltimore Transit Co. v. State*, 183 Md. 674, 678, 39 A.2d 858, 860 (1944); *Western Md. Ry. Co. v. Employer's Liab. Assurance Corp.*, 163 Md. 97, 102, 161 A. 5, 7 (1932). In *Smith v. Bethlehem Steel Corp.*, we stated that Article 101, § 58

---

**1.** Effective October 1, 1991, Ch. 8 of the Acts of 1991 repealed Article 101 and recodified our workers' compensation law. The Maryland Workers' Compensation Act is now found at Md.Code (1991 Repl. Vol.), §§ 9–101 to 9–1201 of the Labor and Employment Article. As a result of the recodification, former Article 101, § 58 has been recodified into three sections. *See* § 9–901 to 9–903 of the Labor and Employment Article.

Erie's payments to Curtis were made prior to the filing of its Intervenor's Complaint on June 13, 1991. Any right that Erie may have acquired in Curtis's action against Nationwide is thus controlled by Article 101, § 58, which was the law in effect at that time. Nevertheless, our resolution of this case would not differ if we were to decide this case based on §§ 9–901 to 9–903 of the Labor and Employment Article, rather than Article 101, § 58.

" 'is for the benefit of the employer or insurer and the injured employee or his dependents; it is not for the benefit of the negligent third party. The statute does not create the right of action, but merely creates or preserves the right of subrogation for the benefit of the employer and employee as their interests may appear. The procedural priorities established are for the protection of those interests alone.' "

303 Md. at 222, 492 A.2d at 1290 (*quoting Johnson v. Miles,* 188 Md. at 460, 53 A.2d at 32).

Although Article 101, § 58 has been amended numerous times since its original enactment by Ch. 800 of the Acts of 1914, the pertinent language for purposes of this decision has remained unchanged since its original enactment. As originally enacted, Article 101, § 58 provided in its entirety:

"Where the injury or death for which compensation is payable under this article was caused under circumstances creating a legal liability in some person, other than the employer, to pay damages in respect thereof, the employe or, in case of death, his personal representative or dependents as hereinbefore defined, may proceed either by law against that other person to recover damages or against the employer for compensation under this article, or in case of joint *tort feasors* against both; and if compensation is claimed and awarded or paid under this article any employer may enforce for the benefit of the insurance company or association carrying the risk or the State Accident Fund, or himself, as the case may be, the liability of such other person; provided, however, if damages are recovered in excess of the compensation already paid or awarded to be paid under this article, then any such excess shall be paid to the injured employe or, in case of death, to his dependents, less the employer's expenses and costs of action." [2]

---

2. As originally enacted, Article 101, § 58 required the injured employee to make an election. *Hubbard v. Livingston Fire Protection, Inc.,* 289 Md. 581, 587, 426 A.2d 901, 904 (1981). The employee could sue

There is no legislative history of the original enactment, but, with regard to the relevant language of Article 101, § 58 at issue in this case, our predecessors stated:

"It will be seen that where injury or death for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect therefor, the section gives to the parties specifically designated therein, under the conditions therein set forth, a right of action against a third party, the tort-feasor. The clear meaning of the language, 'under circumstances creating a legal liability in some person other than the employer,' is that the circumstances under which the injury was received created a liability resting upon the tort-feasor outside of the provisions of section 58, which means that if the injury did not result in death the injured party would have had a right of action at common law against the wrongdoer for such injuries, or in case injury resulted in death, that the dependents would have had a right of action by reason of the liability then existing under Lord Campbell's Act. In other words, section 58 of article 101 does not create any new liability, but simply designates in what manner the liability theretofore existing, under the common law and Lord Campbell's Act, should be enforced, and changes the parties who might be benefited by such enforcement. Section 58 provides, in cases where there was an existing liability on the part of a third person, other than the employer, that in case of death the

the third party or claim compensation under the Act, but the employee could not pursue both remedies. *Id.* Only the employer could enforce third party liability when compensation had been awarded or paid. *Smith v. Bethlehem Steel Corp.,* 303 Md. at 221, 492 A.2d at 1290. If a recovery in a third party action exceeded the compensation awarded or paid, the excess was paid to the injured employee. *Id.* Chapter 456 of the Acts of 1920 and Ch. 303 of the Acts of 1922 amended Article 101, § 58 to provide for a third party action by the injured employee when the employer had not instituted such an action within two months after the award. *Id.* These amendments eliminated the injured employee's election between compensation and a third party action required by the original enactment. *Id.*

dependents, as defined in article 101, may proceed either by law against the tort-feasor or against the employer for compensation under the act, and that if they elect to proceed under the act and compensation is awarded against an employer, where he is self-insured, or against the insurer, the employer in such case, or the insurer, may bring an action to enforce for their benefit the liability of the tort-feasor, and that if the employer who is self-insured, or the insurer, fails to start proceedings to enforce the liability of the tort-feasor within two months from the date of the award of the Industrial Accident Commission, the injured employee, or his dependents in case of death, may enforce the liability of such wrong-doer...."

*Clough & Molloy, Inc. v. Shilling*, 149 Md. 189, 195, 131 A. 343, 345 (1925). We have repeatedly held that Article 101, § 58 "is a[n] ... authorization for suit against a third party tort-feasor." *Hubbard v. Livingston Fire Protection, Inc.*, 289 Md. at 585, 426 A.2d at 903; *see also Johnson v. Miles*, 188 Md. at 460, 53 A.2d at 32 ("Section 5[8] ... is for the benefit of the employer or insurer and the injured employee or his dependents; it is not for the benefit of the negligent third party."); *Baltimore Transit Co. v. State*, 183 Md. at 678, 39 A.2d at 860 ("By amendments, in 1920 and 1922, the ... right was given to the employee ... to sue the negligent third party at law...."); *Hurt v. Pennsylvania Thresherman & Farmers Mut. Casualty Ins. Co.*, 175 Md. 403, 410, 2 A.2d 402, 405 (1938) ("Section 58, provid[es] for suits against third party tort feasors."); *Storrs v. Mech*, 166 Md. 124, 128–29, 170 A. 743, 745 (1934) ("Section 58 provides ... that in case of death the dependents ... may proceed either by law against the tort-feasor or against the employer for compensation under the act...."); *Western Md. Ry. Co. v. Employers' Liab. Assurance Corp.*, 163 Md. at 101, 161 A. at 7 ("As the law stands now, the one paying compensation has the exclusive right within two months of an award where the injury or death of the employee has been caused by a third party, to bring suit ... against the

tort-feasor."); *Barrett v. Indemnity Ins. Co. of N. Am.,* 152 Md. 253, 259, 136 A. 542, 544 (1927) ("The statute gave [the dependent] the right to elect whether she would proceed at law against the tort feasor to recover damages, or against the employer to recover compensation under article 101. . . ."); *Maryland Casualty Co. v. Union Bridge Elec. Mfg. Co.,* 145 Md. 644, 651, 125 A. 762, 764 (1924) ("The right of the employer . . . under section 58, to enforce for their benefit the liability of the tort feasor is established 'if compensation is *claimed* and *awarded* or *paid* under this act.' "); *Bethlehem Steel Co. v. Variety Iron & Steel Co.,* 139 Md. 313, 325–26, 115 A. 59, 63 (1921) ("The *liability* which the employer is thus authorized to enforce is the 'liability of such third person,' and the only liability of 'such third person' referred to in the act is the liability for 'damages,' which the injured employee could have enforced had he elected to do so. This liability is not limited by the act to the compensation awarded or paid, but, on the contrary, . . . it seems clear that the Legislature intended the same measure of recovery to apply as would have applied had the injured employee elected to pursue his remedy against the negligent third person."). Similarly, in the Second Report of the Commission to Study Maryland's Workmen's Compensation Laws and the Operation of the State Industrial Accident Commission submitted to Governor McKeldin in 1957, it was recognized that Article 101, § 58 referred to actions against third party tort-feasors. The report stated in relevant part:

"The Study Commission believes that the fact that disability or death resulted under circumstances giving rise to *an action against a third party tortfeasor,* should not operate, under any circumstances, to decrease the benefits properly allowable under Article 101. To this end we recommend the repeal of Section 59 [now Section 58] and its reenactment with amendments. . . ."

*Id.* at 24 (emphasis added).

It is pellucid that the language "[w]here injury or death for which compensation is payable under this article was

caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof," provided by Article 101, § 58 refers solely to an action against a third party tort-feasor.

In contrast, we have held that "[a]ctions by insureds or persons covered under insurance policies, against their insurers, for benefits under so-called first party coverages such as PIP or uninsured motorist, are contract actions and are generally controlled by principles applicable to contract actions." *Ward v. Nationwide Mut. Auto. Ins. Co.*, 328 Md. 240, 246, 614 A.2d 85, 87 (1992); *Lane v. Nationwide Mut. Ins. Co.*, 321 Md. 165, 169–70, 582 A.2d 501, 503 (1990); *Reese v. State Farm Mut. Auto. Ins. Co.*, 285 Md. 548, 553, 403 A.2d 1229, 1232 (1979). Speaking for the Court in *Reese v. State Farm Mut. Auto. Ins. Co.*, Judge Eldridge stated that

> "uninsured motorist coverage is in insurance parlance 'first party coverage' like collision, comprehensive, medical payments or personal injury protection, and not 'third party coverage' such as personal injury or property damage liability insurance. A suit based upon the insured's allegations that he is entitled to payment under one of the first party coverage clauses in the contract he entered into with his insurance carrier, and that the carrier has refused payment thereby breaching its promise, is clearly a contract action."

285 Md. at 552, 403 A.2d at 1231–32.

Thus, under the plain language of Article 101, § 58, Erie, as a workers' compensation carrier, has no claim against the proceeds of Curtis's contract action against Nationwide. *ANA Towing, Inc. v. Prince George's County*, 314 Md. 711, 715, 552 A.2d 1295, 1297 (1989); *Washington Nat'l Arena v. Comptroller*, 308 Md. 370, 375, 519 A.2d 1277, 1280 (1987).

Furthermore, it is immaterial whether the injured employee's uninsured motorist coverage is provided under an insurance policy issued to the employee or one issued to his

employer. The jurisdictions that have addressed the question of whether a workers' compensation carrier that has paid compensation benefits should have a lien upon the proceeds of the claimant's recovery under an uninsured motorist policy have almost unanimously held that the carrier is not entitled to such a lien. 2A Arthur Larson, *The Law of Workmen's Compensation* § 71.23(a) (1993). These courts have reached this result whether the uninsured motorist coverage was provided under an insurance policy issued to the employer, *Knight v. Insurance Co. of N. Am.*, 647 F.2d 127, 128–29 (10th Cir.1981) (applying Kansas law); *Bogart v. Twin City Fire Ins. Co.*, 473 F.2d 619, 629 (5th Cir.1973) (applying Texas law); *Holmes v. Washington Metro. Area Transit Auth.*, 731 F.Supp. 1115, 1118–19 (D.D.C.1990); *State Farm Mut. Auto. Ins. Co. v. Cahoon*, 287 Ala. 462, 468–69, 252 So.2d 619, 623–24 (1971); *Sun State Equip. Corp. v. Industrial Comm'n*, 135 Ariz. 477, 479–80, 662 P.2d 152, 154 (Ariz.Ct.App.1983); *State Comp. Ins. Fund v. Gulf Ins. Co.*, 628 P.2d 182, 183–84 (Colo.Ct.App.1981); *State Farm Mut. Auto. Ins. Co. v. Board of Regents*, 226 Ga. 310, 311–12, 174 S.E.2d 920, 922 (1970); *State Farm Mut. Auto. Ins. Co. v. Fireman's Fund Am. Ins. Co.*, 550 S.W.2d 554, 556–57 (Ky.1977); *Cooper v. Younkin*, 339 N.W.2d 552, 553–54 (Minn.1983); *Cossitt v. Nationwide Mut. Ins. Co.*, 551 So.2d 879, 886 (Miss.1989); *Barker v. H & J Transporters, Inc.*, 799 S.W.2d 117, 118–19 (Mo.Ct.App.1990), *reh'g denied*, 837 S.W.2d 537 (Mo.Ct.App. 1992); *Truck Ins. Exch. v. State Indus. Ins. Sys.*, 107 Nev. 995, 997, 823 P.2d 279, 280–81 (1991); *Merchants Mut. Ins. Group v. Orthopedic Prof. Ass'n*, 124 N.H. 648, 655–60, 480 A.2d 840, 845–47 (1984); *Gantt v. L & G Air Conditioning & Transamerica Ins. Co.*, 101 N.M. 208, 212–14, 680 P.2d 348, 352–54 (N.M.Ct.App.1983), *writ quashed*, 101 N.M. 189, 679 P.2d 1287 (N.M.1984); *Boris v. Liberty Mut. Ins. Co.*, 356 Pa.Super. 532, 539–41, 515 A.2d 21, 24–25 (1986); *Department of Labor & Indus. v. Cobb*, 59 Wash. App. 360, 362–63, 797 P.2d 536, 538 (1990), *cert. denied*, 116 Wash.2d 1031, 813 P.2d 582 (1991); *cf. Thrasher v. Act-*

*Fast Labor Pool, Inc.,* 806 P.2d 640, 642 (Okla.1990) (injured employee who was a passenger in vehicle brought an action against the driver's uninsured motorist carrier); *Berna-Mork v. Jones,* 174 Wis.2d 645, 498 N.W.2d 221, (1993) (same), *aff'g,* 165 Wis.2d 661, 663, 478 N.W.2d 301, 302 (Wis.Ct.App.1991), or the uninsured motorist coverage was provided under an insurance policy issued to the employee, *Jackson v. Weaver,* 516 So.2d 702, 706 (Ala.Ct.Civ.App. 1987); *Allied Mut. Ins. Co. v. Larriva,* 19 Ariz.App. 385, 386–87, 507 P.2d 997, 999 (1973); *Travelers Ins. Co. v. National Farmers Union Prop. & Cas. Co.,* 252 Ark. 624, 626–28, 480 S.W.2d 585, 588–89 (1972); *Volk v. Gallopo,* 585 So.2d 1163, 1166 (Fla.Dist.Ct.App.1991); *March v. Pekin Ins. Co.,* 465 N.W.2d 852, 854 (Iowa 1991); *Janzen v. Land O'Lakes, Inc.,* 278 N.W.2d 67, 69–70 (Minn.1979); *Hartford Accident & Indem. Co. v. Glickman,* 84 Misc.2d 33, 35–36, 374 N.Y.S.2d 566, 568–69 (N.Y.Civ.Ct.1975); *Bill Hodges Truck Co., Inc. v. Humphrey,* 704 P.2d 94, 95–96 (Okla.Ct. App.1984); *Southeast Furniture Co. v. Barrett,* 24 Utah 2d 24, 26–27, 465 P.2d 346, 348 (1970); *Horne v. Superior Life Ins. Co.,* 203 Va. 282, 285–86, 123 S.E.2d 401, 404 (1962).

With regard to the uninsured motorist benefits provided under an employer's insurance policy, Professor Larson states:

"When it is the employer's uninsured motorist policy that is involved, one of the strongest arguments against any lien or offset disappears—the argument that the employee should not be deprived of the benefits of a privately-purchased insurance contract that he has paid for himself."

2A Larson, *supra,* § 71.23(i). Nonetheless, we agree with the rationale provided by those courts which have held that the workers' compensation carrier is not entitled to a lien on uninsured motorist benefits provided by an employer's insurance policy. Among the reasons stated by these courts are: (1) the insurance proceeds are not converted from contract payments to damages simply because the employee

is the intended beneficiary rather than the contracting party, *Holmes*, 731 F.Supp. at 1118; *Cooper*, 339 N.W.2d at 553; (2) the uninsured motorist coverage remains a contractual liability regardless of who pays the premium, *Holmes*, 731 F.Supp. at 1119; *Cooper*, 339 N.W.2d at 553; *Barker*, 799 S.W.2d at 119; (3) the uninsured motorist carrier does not insure the tort-feasor against liability, but insures the employee against the risk of inadequate compensation if he is injured in an accident with an uninsured motorist, *Merchants Mut. Ins. Group*, 124 N.H. at 657, 480 A.2d at 845; (4) payments made by the uninsured motorist carrier are not payments made by or on behalf of the uninsured motorist tort-feasor, nor do such payments discharge pro tanto the liability of the uninsured motorist, *State Farm Mut. Auto. Ins. Co. v. Board of Regents*, 226 Ga. at 311, 174 S.E.2d at 922; and (5) the workers' compensation carrier is not a third-party beneficiary under the uninsured motorist insurance contract, *Gulf Ins. Co.*, 628 P.2d at 184. In *Knight*, the United States Court of Appeals for the Tenth Circuit distilled the principles found throughout these cases when it stated:

"Although Kansas courts have not confronted this issue, many other jurisdictions have, and all seem to give the same answer: a workman's compensation carrier's subrogation rights do not extend to actions based on uninsured motorist policies. The common thread of analysis in all these cases is that under workmen's compensation statutes with similar language subrogation is allowed only for actions in tort; and actions based on uninsured motorist policies sound in contract, not tort....

"Although INA contends section 44–504 in no way limits its coverage to tort actions, two such limitations exist in the statute. First, the statute only applies when the injury or death was caused under circumstances creating a legal liability 'to pay damages.' Courts have pointed out that 'a payment made in performance of a contractual obligation is not a payment of damages.' Second, we think it significant that section 44–504 de-

clares that the failure of a workman to bring a timely suit against a third party 'shall operate as an assignment to the employer of any cause of action in tort' which the workman may have against the third party. The Kansas Supreme Court has held that actions based on uninsured motorist policies sound in contract.

"INA emphasized that the uninsured motorist policy was paid for by the employer, Garrett–Holmes, not the employee seeking to recover. It is true that some cases emphasize the fact that the employee paid for the policy with funds out of his own pocket and is entitled to the extra coverage. The trial court here found the difference as to who paid for the uninsured motorist coverage to be important. But we do not agree. The statutory language of section 44–504 provides no basis for such a distinction. That section applies to tort claims only, both as to the rights it preserves for employees and the subrogation right it creates for employers. We believe the section is simply inapplicable to this contract claim."

647 F.2d at 128–29 (citations omitted).[3]

Our conclusion that Erie was properly denied any lien on Curtis's recovery under the uninsured motorist coverage of Entec's policy with Nationwide is further supported by other considerations we now explain.

---

**3.** We recognize and decline to follow the minority of jurisdictions which allow a workers' compensation carrier to assert a lien against uninsured motorist benefits. *Harris v. New Castle County,* 513 A.2d 1307 (Del.1986); *Johnson v. Fireman's Fund Ins. Co.,* 425 So.2d 224 (La.1982) (lien permitted against uninsured motorist benefits provided under employer's insurance policy but not against employee's own insurance policy); *Wallace v. City of South Portland,* 592 A.2d 1076 (Me.1991) (same); *Montedoro v. City of Asbury Park,* 174 N.J.Super. 305, 416 A.2d 433 (1980); cf. *Gullett v. Brown,* 307 Ark. 385, 820 S.W.2d 457 (1991) (recovery of uninsured motorist benefits from a self-insured employer barred by exclusivity principle). It is noteworthy that none of these jurisdictions has a statute similar to Article 48A, § 543(d) which prevents double recovery by reducing the uninsured motorist benefits to the extent that workers' compensation benefits have been received by an injured employee. *See infra* Part III.A.

### III.

### A.

Allowing Erie to assert a lien against uninsured motorist benefits would be illogical in light of the Legislature's well structured uninsured motorist statute. We have stated repeatedly that " 'the purpose of [the] uninsured motorist [statute] is 'that each insured under such coverage have available the full statutory minimum to exactly the same extent as would have been available had the tortfeasor complied with the minimum requirements of the financial responsibility Law.' ' " *Forbes v. Harleysville Mut. Ins. Co.*, 322 Md. 689, 697, 589 A.2d 944, 948 (1991) (*quoting Nationwide Mut. Ins. Co. v. Webb*, 291 Md. 721, 737, 436 A.2d 465, 474 (1981) *which is quoting Webb v. State Farm Mut. Auto. Ins. Co.*, 479 S.W.2d 148, 152 (Mo.Ct.App.1972)). We have similarly "emphasized that the uninsured motorist statute 'embodies a public policy 'to assure financial compensation to the innocent victims of motor vehicle accidents who are unable to recover from financially irresponsible uninsured motorists.' ' " *Forbes*, 322 Md. at 697, 589 A.2d at 948 (*quoting Lane v. Nationwide Mut. Ins. Co.*, 321 Md. 165, 169, 582 A.2d 501, 503 (1990) *which is quoting Pennsylvania Nat'l Mut. Casualty Ins. Co. v. Gartelman*, 288 Md. 151, 157, 416 A.2d 734, 737 (1980)).

Nonetheless, we have recognized, as complying with the legislative mandate of Article 48A, § 543(d), the reduction of uninsured motorist benefits to the extent that the insured has received workers' compensation. *Revis v. Maryland Auto. Ins. Fund*, 322 Md. 683, 687, 589 A.2d 483, 484 (1991); *Hines v. Potomac Elec. Power Co.*, 305 Md. 369, 377, 504 A.2d 632, 636 (1986). Section 543(d) provides:

"Benefits payable under [the personal injury protection and uninsured motorist statutes] shall be reduced to the extent that the recipient has recovered benefits under workmen's compensation laws of any state or the federal government."

We explained in *Revis v. Maryland Automobile Insurance Fund* that

"Section 543 was enacted as part of a broad comprehensive statutory scheme governing motor vehicle insurance and reparations for damages suffered in automobile accidents. Prohibiting the duplication of certain benefits was one of the expressed purposes of that enactment. Nevertheless, it is equally clear that the General Assembly did not intend to prohibit duplication of all benefits."

322 Md. at 687, 589 A.2d at 484 (citations omitted). Consequently, Nationwide, the uninsured motorist carrier, is entitled to reduce the amount of uninsured motorist benefits payable to Curtis by the amount Curtis received as workers' compensation as a result of Article 48A, § 543(d).

Even if Erie, the workers' compensation carrier, was entitled to a lien against the uninsured motorist benefits payable to Curtis, after the offset of Article 48A, § 543(d) is applied by the uninsured motorist carrier, there are no funds which can be identified with the workers' compensation carrier's lien. In this regard, Professor Larson states

"The interplay between the compensation insurer's lien issue and the uninsured motorist offset is involved even more significantly in another respect: if the offset is valid, the question whether the compensation carrier has a lien against the proceeds of the uninsured motorist policy is quickly answered, since there are no such proceeds left after the offset that can be identified with the compensation carrier's lien."

2A Larson, *supra*, § 71.23(c). Thus, even if we were to conclude that under Article 101, § 58 Erie was entitled to recover its lien from the uninsured motorist benefits payable to Curtis, after Nationwide reduces the amount of uninsured motorist benefits by the amount of compensation paid to Curtis, there are no proceeds that can be identified with the workers' compensation lien. To hold otherwise would be patently unfair to Curtis and illogical in light of the comprehensive legislative scheme which prevents the duplication of benefits.

**B.**

■ Finally, allowing Erie to assert its lien against uninsured motorist benefits would contravene the minimum uninsured motorist coverage required by Article 48A, § 541. Section 541(c)(2) states that "[i]n no case shall the uninsured motorist coverage be less than the coverage afforded a qualified person under Article 48A, §§ 243–H and 243–I." [4] Sections 243H and 243–I relate to claims not covered by insurance and payable by the Maryland Automobile Insurance Fund ("MAIF"). *Forbes,* 322 Md. at 699, 589 A.2d at 949. Article 48A, § 243–I(a) provides that the maximum amount payable by MAIF for claims filed under § 243H shall be $20,000 for one injury.

Section § 243–I(d) like § 543(d) allows MAIF to reduce the payment to the claimant to the extent that the claimant has recovered workers' compensation, but unlike § 543(d), expressly provides that the workers' compensation carrier is not entitled to a lien on payments made by MAIF. Section 243–I(d) provides:

"Notwithstanding the provisions of any workmen's compensation or similar law to the contrary, neither the employer of an injured person or decedent nor the insurer of such employer shall be entitled to a lien on payment from the Fund where the amount of the payment has been reduced by the amount of benefits paid or to be paid pursuant to any workmen's compensation or similar law, nor shall the workmen's compensation benefits be reduced because of the reduced payment from the Fund."

Erie asserts that by expressly prohibiting workers' compensation carriers from asserting a lien against payments from MAIF and by failing to similarly provide such a prohibition with regard to uninsured motorist benefits the Legislature has acknowledged the right of workers' compensation carri-

---

4. By Ch. 625 of the Acts of 1991, effective July 1, 1991, Article 48A, § 541(c) was rewritten and recodified. The quoted provision is now codified as Md.Code (1957, 1992 Cum.Supp.), Article 48A, § 541(c)(2)(v).

ers to assert a lien against uninsured motorist benefits provided by private insurers. This conclusion is simply wrong.

If we were to adopt Erie's interpretation of Article 101, § 58, that it may assert a lien against the uninsured motorist benefits payable to Curtis, the following would result. If a judgment was entered against Nationwide for $20,-000.00, Nationwide would assert its workers' compensation offset of $14,259.10, Erie would be entitled to a lien on the remaining $5,740.90, and Curtis would receive nothing. On the other hand, a similarly situated plaintiff with an identical judgment against MAIF would receive $5,740.90 from MAIF, inasmuch as the workers' compensation carrier is precluded by § 243-I(d) from asserting its lien. Erie's interpretation would permit what Article 48A, § 541(c) expressly forbids, i.e., allowing a private insurer to provide less coverage than a qualified person under Article 48A, §§ 243H and 243–I. *See Forbes*, 322 Md. at 699, 589 A.2d at 949.

For these additional reasons, we hold that Erie was correctly denied any lien for workers' compensation paid Curtis upon Curtis's recovery under the uninsured motorist coverage of Entec's policy.

**JUDGMENT AFFIRMED, WITH COSTS.**