2003 OK CIV APP 84

Jeffrey M. TOMLINSON,
Plaintiff/Appellee,

v.

CONTINENTAL CASUALTY COMPANY, a Foreign Insurance Company; Jackie Lee Beam, an individual; and Ascot Cartage Company, an Oklahoma corporation, Defendants,

and

Transcontinental Insurance Company, Intervenor/Appellant.

No. 99,040.

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 2, 2003.

Mark W. Schilling, Riggs, Abney, Neal, Turpen, Orbison & Lewis, Tulsa, OK, for Plaintiff/Appellee.

John B. DesBarres, Wilson, Cain & Acquaviva, Tulsa, OK, for Intervenor/Appellant.

Opinion by KENNETH L. BUETTNER, Judge:

¶ 1 Intervenor/Appellant Transcontinental Insurance Company (Transcontinental) appeals from the trial court's order which denied Transcontinental's Motion for Summary

Judgment and granted the Cross–Motion for Summary Judgment filed by Plaintiff/Appellee Jeffrey M. Tomlinson. The summary judgment denied Transcontinental's quest to be reimbursed for workers' compensation benefits paid to Tomlinson after Tomlinson received an amount greater than the workers' compensation benefits in a settlement with a third-party tortfeasor. Because we find that Transcontinental had a statutory right to subrogation of workers' compensation benefits paid to Tomlinson, we reverse and remand.

¶ 2 The facts of this case are not in dispute. Tomlinson was badly injured in the course and scope of his employment with Westco, Inc. March 8, 1999. The injury was due to the negligence of a third party, Defendant Ascot Cartage Company (Ascot). Transcontinental was the workers' compensation insurer for Westco at the time of the injury. Tomlinson made a claim for workers' compensation benefits and following a joint petition settlement, Transcontinental paid Tomlinson $170,566.94 in workers' compensation benefits March 19, 2001.

¶ 3 In the meantime, Tomlinson filed a third-party claim against Ascot and received a settlement of $481,695.88 from Ascot February 21, 2001. Transcontinental filed its Unopposed Application to Intervene in this action between Tomlinson and Ascot, seeking to recover its statutory workers' compensation subrogation from the third-party settlement. Transcontinental asserted that it was entitled to $109,926.48 pursuant to 85 O.S. 2001 § 44 and *Prettyman v. Halliburton,* 1992 OK 63, 841 P.2d 573. Transcontinental indicated in its Application to Intervene that Tomlinson disagreed with the subrogation amount because he was not made whole by the third-party settlement. Transcontinental argued that the "make whole" rule does not apply to statutory subrogation, but applies only to contractual subrogation, citing *Equity Fire and Casualty Company v. Youngblood,* 1996 OK 123, 927 P.2d 572. Transcontinental indicated that Tomlinson and Transconti-

nental had agreed to hold $109,926.48 in escrow pending the outcome of the intervention proceeding.

¶ 4 Transcontinental and Tomlinson filed a Joint Statement of Facts June 14, 2001. The statement detailed how Tomlinson was injured and the extent of his injuries. The statement also indicated that two other people were injured in the accident, that Ascot was insured for $1,000,000, and that after mediation it was decided that Tomlinson's injuries were the most severe and he received 48% of Ascot's policy amount. The statement concluded with a declaration that the issue for the trial court was whether and to what extent Transcontinental may claim a subrogation interest in the third-party settlement paid to Tomlinson. Transcontinental and Tomlinson filed a Supplemental Joint Statement of Facts June 25, 2001. The supplemental statement noted that Tomlinson's counsel received a 35% contingent fee from the third-party settlement amount, and that Tomlinson reimbursed his counsel for $2,660.33 in costs, so that Tomlinson received a net award of $310,442, from which Transcontinental sought to recover $109,926.48 in subrogation.

¶ 5 Transcontinental filed its Motion for Summary Judgment July 26, 2001. Tomlinson filed his Opposition to Summary Judgment and Cross–Motion for Summary Judgment August 8, 2001. The parties did not dispute the facts. The dispute remained whether the so-called "make whole" rule applies to the § 44 subrogation right. The trial court granted summary judgment in favor of Tomlinson and held that Transcontinental was not entitled to any subrogation in this case and awarded the escrowed funds to Tomlinson.

¶ 6 Transcontinental asserts it is entitled to reimbursement from the third-party settlement for workers' compensation benefits it had paid. Transcontinental relies on 85 O.S.2001 § 44 [1] and *Prettyman, supra.*

---

1. That section provides:
   (a) If a worker entitled to compensation under the Workers' Compensation Act is injured or killed by the negligence or wrong of another not in the same employ, such injured worker shall, before any suit or claim under the Workers' Compensation Act, elect whether to take compensation under the Workers' Compensation Act, or to pursue his remedy against such other. Such election shall be evidenced in

In *Prettyman*, the Oklahoma Supreme Court was faced with determining the effect of an amendment to § 44 which added the language beginning with "(w)henever recovery against such other person is effected without compromise settlement...." In *Prettyman*, the workers' compensation insurer sought to recover the compensation paid to the claimant after the claimant settled with the third-party tortfeasor. *Id.* at 574. The settlement was for more than the workers' compensation benefits paid, but was for less than the amount the claimant had sought from the third-party tortfeasor. *Id.* Based on that fact, the trial court compelled the insurer to accept a reduced amount as full satisfaction of its subrogation claim. *Id.*

¶ 7 In *Prettyman*, the plaintiff had argued to the trial court that since he settled with the third-party tortfeasor for 33% of what he had requested, the compensation insurer should likewise be reimbursed only for 33%

of the compensation it had paid. *Id.* at 576. The plaintiff based this argument on his assertion that his settlement with the third party was a "compromise settlement" under § 44, which required the compensation reimbursement to be reduced and which required the compensation carrier to contribute to the plaintiff's costs and attorney fees. *Id.* The Supreme Court explained, however, that the term "compromise settlement" in § 44 does not mean settling the third-party claim for less than the amount requested, but rather settling the third-party claim for less than the amount of compensation provided under the Workers' Compensation Act. *Id.* at 579. The court reiterated its earlier holding that the employer or insurer is only liable for any deficiency between the amount received from the third-party tortfeasor and the compensation allowed under the Act. *Id.* at 580, citing *Weiss v. Salvation Army*, 1976 OK 139, 556 P.2d 598, 601.

such manner as the Administrator may by rule or regulation prescribe. If he elects to take compensation under the Workers' Compensation Act, the cause of action against such other shall be assigned to the insurance carrier liable for the payment of such compensation, and if he elects to proceed against such other person or insurance carrier, as the case may be, the employer's insurance carrier shall contribute only the deficiency, if any, between the amount of the recovery against such other person actually collected, and the compensation provided or estimated by the Workers' Compensation Act for such case. The compromise of any such cause of action by the worker at any amount less than the compensation provided for by the Workers' Compensation Act shall be made only with the written approval of the Court. Whenever recovery against such other person is effected without compromise settlement by the employee or his representatives, the employer or insurance company having paid compensation under the Workers' Compensation Act shall be entitled to reimbursement as hereinafter set forth and shall pay from its share of said reimbursement a proportionate share of the expenses, including attorneys fees, incurred in effecting said recovery to be determined by the ratio that the amount of compensation paid by the employer bears to the amount of the recovery effected by the employee. After the expenses and attorneys fees have been paid, the balance of the recovery shall be apportioned between the employer or insurance company having paid the compensation and the employee or his representatives in the same ratio that the amount of compensation paid by the employer bears to the total amount recovered; provided, however, the balance of the recovery may be divided

between the employer or insurance company having paid compensation and the employee or his representatives as they may agree.

In the event that recovery is effected by compromise settlement, then in that event the expenses, attorneys fees and the balance of the recovery may be divided between the employer or insurance company having paid compensation and the employee or his representatives as they may agree. Provided, that in the event they are unable to agree, then the same shall be apportioned by the district court having jurisdiction of the employee's action against such other person, in such manner as is just and reasonable.

(b) The employer or his insurance carrier shall not have the right of subrogation to recover money paid by the employer or his insurance carrier for death claims or death benefits under the Workers' Compensation Act from third persons, with all common law rights against other than the employer and his employees preserved and to be in those persons who would have had such rights had there been no death claim or death benefits under the Workers' Compensation Act.

(c) The employer or his insurance carrier shall have the right of subrogation to recover money paid by the employer or his insurance carrier for the expenses of the last illness or accident under the Workers' Compensation Act from third persons, with all common law rights against other than the employer and his employees preserved and to be in those persons who would have had such rights had there been no benefits under the Workers' Compensation Act.

¶ 8 After determining that a settlement with the third party for more than the compensation allowed by the Act, but for less than the amount prayed for, is not a compromise settlement, the court noted that under § 44 the insurer's subrogation interest is not reduced where there has not been a compromise settlement. The court explained:

> The certain goal of the legislature is to provide for payment of a proportionate share of expenses and attorney fees incurred in effecting recovery of the fund from which the insurer will recoup its subrogated compensation payment in those instances where recovery is not made by compromise settlement; where the worker does not receive less than the compensation provided or estimated by the Act.... The entire purpose of § 44 would be destroyed if the statute were interpreted in the manner urged by plaintiff. To force the insurer to accept $29,000 as a "compromise" or "apportionment" of its $152,000 subrogated claim when the employee has recovered a much greater sum from the tortfeasor would defeat the underlying intent of § 44: the protection of the employer's right of full subrogation and the prevention of double recovery of the employee.

*Id.* at 581. The court also noted its earlier holding in *Carter v. Wooley,* 1974 OK 45, 521 P.2d 793, that where the claimant received a third-party settlement for more than the amount of workers' compensation benefits, the compensation insurer was entitled to recover the full amount of benefits it had paid. The court in *Prettyman* concluded that this result is not affected by the amendment to § 44. That amendment simply required the compensation insurer to pay a portion of the costs and attorney fees incurred in obtaining the third-party settlement, because the compensation insurer would receive the benefit of its subrogation right out of the third-party settlement amount when there was not a compromise settlement.[2] *Id.* at 582.

¶ 9 In this case, Tomlinson argued that since the *Prettyman* decision, the Oklahoma Supreme Court has determined that the so-called "make whole" rule applies to reduce an insurer's subrogation amount, citing *Equity Fire and Cas. Co. v. Youngblood, supra.* In *Youngblood,* the defendant was injured in an auto accident and her medical expenses were paid by her father's employee benefits plan. The two auto insurance companies involved deposited the policy limits into the court and were dismissed. The employee benefit plan sought reimbursement of the expenses it paid from the auto insurance funds. The parties were in agreement that the defendant's total damages were more than the amount of the insurance funds available. The trial court therefore awarded the insurance funds to the defendant and the employee benefit plan appealed.

¶ 10 The court in *Youngblood* noted that the employee benefit plan was covered by ERISA. The court stated the issue to be whether ERISA mandated enforcement of the plan's subrogation and reimbursement provision despite the fact the defendant received less than her total damages. *Id.* at 574. The court then stated the more specific first impression question: "(i)s a contractual subrogation or reimbursement provision, which contains no priority of payment provision, enforceable under Oklahoma law where the recipient of the benefits sought to be recovered has not been fully compensated by payments from a third party?" *Id.* The court agreed with a line of cases holding that if a benefit plan subject to ERISA lacks a priority of payment provision, does not give its managers the express right to resolve ambiguities, and the facts do not clearly show that the third-party settlement included payment for medical expenses, then the plan will not be allowed reimbursement. *Id.* at 575. The court explained that unambiguous policies would include a provision to the effect that the plan will be reimbursed regardless of whether the member had been fully compensated, and noted that a lack of such priority

---

2. The formula established in § 44 was explained by the court in *Prettyman:* after determining the ratio of the workers' compensation benefits to the total third-party recovery, the costs and attorney fees are subtracted from the total recovery and the remaining amount is multiplied by the ratio amount and the result is the subrogation award to the compensation insurer. 841 P.2d at 582.

provision gives rise to the "make whole" rule. That rule prohibits a party who seeks subrogation or reimbursement out of recoveries made due to personal injuries from recovering until the injured party has been fully compensated for his injuries. *Id.* at 575–576. In concluding, the court held:

> We adopt the make whole rule in *contract subrogation and reimbursement cases* where (1) the subrogation or reimbursement contract neither expressly sets priorities for the repayment of benefits, nor otherwise gives a right to subrogation or reimbursement before any funds are paid to the beneficiary, nor vests the plan manager's discretionary authority to interpret ambiguous provisions of the plan; and (2) the compensation received by the beneficiary from the settlement with or judgment against a third party represents less than full compensation. Under such circumstances, the subrogation and reimbursement terms of the contract will be unenforceable.

*Id.* at 576–577 (emphasis added).

■ ¶ 11 In this case, Tomlinson persuaded the court that the "make whole" rule applied to the § 44 statutory subrogation right found in the Workers' Compensation Act. However, we agree with Transcontinental that a contractual subrogation provision is different from a statutory provision. Transcontinental relies on *Young v. Columbia Southwestern Medical Center*, 1998 OK CIV APP 124, 964 P.2d 987, as authority for its argument that statutory subrogation is not subject to the "make whole" rule. In *Young*, the Oklahoma Health Care Authority paid medical expenses, pursuant to approved medicaid benefits, for a baby who sustained damages at birth and later died. The parents of the baby filed a wrongful death action against the hospital and the claim was settled

for $500,000. OHCA then sought to enforce its statutory lien for repayment of the medical expenses it paid. In *Young*, this court noted that 63 O.S.Supp.1996 § 5051.1 provided OHCA a lien to recover expenses it has paid when the payee receives a settlement or judgment sufficient to pay both the payee's counsel fees and the lien. ¶ 8. This court expressly held that *Youngblood* is inapplicable to a case involving a statutory lien. *Id.* Although *Young* addressed a different statutory provision, we agree with Transcontinental that *Young* provides strong support for the decision that a statutory subrogation right is not limited by the "make whole" rule.[3]

■ ¶ 12 Nothing in § 44, nor in the cases discussing it, refers in any way to a requirement that the claimant be made whole by a third-party settlement before the compensation insurer's subrogation right arises.[4] As has been stated, the purpose of § 44 is to prevent a double recovery. And, while one may argue that a person who has not been fully paid for his total damages is not receiving a "double benefit," indeed such person is receiving a double benefit where the third-party settlement exceeds the amount awardable under the Workers' Compensation Act. In that situation, the employee is receiving the amount awardable under the Act from two sources, which is the outcome prohibited by § 44. While no case involving § 44 expressly addresses whether the claimant has been made whole, we note that much of the discussion in *Prettyman* revolved around the fact that the injured worker settled with the third-party tortfeasor for less than the amount requested in his petition. Nevertheless, the court rejected the trial court's decision to accordingly reduce the subrogation amount. *Prettyman* established that in *any* case where the third-party settlement is for

---

**3.** See also *ACCOSIF v. American States Ins. Co.*, 2000 OK 21, 1 P.3d 987, 993–994, which addressed the limitations period for a compensation carrier's action for reimbursement of compensation benefits from proceeds the injured worker received from a third-party tortfeasor, and in which the court expressly labeled the carrier's action a "statute-based" liability, as contrasted to a contractual liability.

**4.** Indeed, the fact that § 44 requires apportionment of the third-party settlement where there has been a compromise settlement shows a legislative rejection of the "make whole" rule in § 44 cases. If an injured worker has settled with a third party for less than the amount awardable under the Workers' Compensation Act, then undoubtedly the worker has not been made whole, yet § 44 still requires that the compensation insurer receive some portion as reimbursement.

an amount equal to or greater than the amount of compensation provided for in the Workers' Compensation Act, the compensation insurer is entitled to subrogate the full amount of compensation benefits paid. Nothing in *Youngblood* requires a different result in cases proceeding under § 44 statutory subrogation.

¶ 13 The Maryland Court of Appeals addressed this issue in *Podgurski v. One Beacon Insurance Co.*, 374 Md. 133, 821 A.2d 400 (Md.App.2003). In that case, the injured worker sought to avoid reimbursing the compensation insurer after the third-party tortfeasor declared bankruptcy to avoid paying the full damages award. *Id.* at 403–404. The court noted the subrogation provision in the Maryland workers' compensation statutes was unambiguous. It provided that when an injured worker recovers damages from another, the worker may deduct his costs and expenses and then "shall reimburse" the compensation insurer for the compensation already paid or awarded, as well as amounts paid for medical services, and only then may the worker keep the balance of the damages recovered. *Id.* at 407. The court noted that the subrogation statute did not modify the damages from which subrogation was required to "sufficient" or "total" damages. *Id.* The court further explained that the statute simply asks whether the employee recovered damages from a third party in excess of the amount of compensation paid, and that the subrogation statute does not consider whether the employee has been fully compensated. *Id.* at 407–408. As additional support for its holding, the Maryland court explained that the subrogation provision gives the employer the right to institute the action against the third party and thereby recover the compensation it has paid before the employee is able to recover damages above that amount. *Id.* at 409. The court noted "(t)his illustrates a legislative intent to ensure that a neutral party, the employer, is not made to pay for damages caused by the actual at-fault party." *Id.* at 409–410. The court held the worker must fully reimburse the compensation insurer for the full amount of workers' compensation benefits after receiving a greater amount from a third-party tortfeasor.

¶ 14 Section 44 similarly requires a worker injured by a third party to assign his third-party cause of action to the employer or its insurer when the worker elects to seek workers' compensation benefits for injuries caused by a third party. As the Oklahoma Supreme Court explained long ago:

The Workmen's Compensation Act was enacted by the Legislature for the benefit of injured employees.... By this act it was not intended to affect, in any manner, the right of one to proceed against a negligent third party for personal injuries. The Workmen's Compensation Act provides compensation for injury without regard to negligence. It is obvious, therefore, that a cause of action arising under the Workmen's Compensation Act is by nature distinctly different from the common-law remedy for damages resulting from negligence. Although both arise by reason of injury, yet, under the Workmen's Compensation Act, the recovery is without regard to negligence and is governed by a scale or rate fixed by the Legislature and is in lieu of wages, while the common-law action for personal injury must be based upon and flow directly and proximately from negligent acts....

It is apparent that the Legislature intended that before an injured workman, ... whose injuries were caused by the negligence of a third party, should be entitled to the extraordinary benefits of the act, he should be required to elect which liability he would pursue first. For the protection of his employer and insurance carrier, who are obliged under the act to pay for injuries without regard to negligence, if an injured employee files a claim for compensation but desires first to proceed against the third party involved, he is required to assert such intention and assign his cause of action against the third party, ... so that in the event of recovery against the negligent third party the employer and insurance carrier may, to some extent, recoup their loss by reason of payments made for injury without regard to negligence.

*Parkhill Truck Co. v. Wilson*, 1942 OK 168, 190 Okla. 473, 125 P.2d 203, 207. This language demonstrates another basis for re-

jecting the "make whole" rule in § 44 subrogation: workers' compensation benefits are intended to replace wages and are not damages for negligence. Accordingly, the goal is not necessarily to "make whole" the injured worker by payment of workers' compensation benefits. The employee must elect which benefits to receive first, and if he pursues both, the compensation insurer is statutorily entitled to reimbursement from any recovery from the third-party tortfeasor.

¶ 15 For these reasons, we reverse the summary judgment entered in favor of Tomlinson and remand for a determination of Transcontinental's subrogation interest under the terms of § 44.

REVERSED AND REMANDED.

ADAMS, P.J., and JOPLIN, C.J., concur.